UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MELVIN W. HARRIS, et al.,

       Plaintiffs,                               Case No. 2:04-cv-574
                                                      JUDGE GREGORY L. FROST
      v.                                            Magistrate Judge Mark R. Abel

TMNG TECHNOLOGIES, INC., et al.,

       Defendants.

**OPINION AND ORDER**

This matter is before the Court for consideration of Defendants' motion for summary judgment (Doc. # 33), Plaintiffs' memorandum in opposition (Doc. # 41), and Defendants' reply (Doc. # 42). For the reasons that follow, this Court finds the motion well taken in regard to the promissory estoppel claims, but not well taken in regard to the breach of contract claims.

**I. Background**

Since before 2001, Plaintiffs, Melvin Harris, Brad Schafer, and Brian Zapior, worked for TRI-COM Computer Services, Incorporated. In September 2001, TRI-COM merged with Defendant TMNG Technologies, Incorporated and became a subsidiary of Defendant The Management Network Group, Incorporated. After the merger, Plaintiffs signed employment agreements (Docs. # 2, 4, 6) and later amendments to their respective employment agreements (Doc. # 33, Ex. 9, 10, 11) that provided that they were employees at will. These amendments also provided for the payment of severance benefits upon termination without cause or upon a constructive termination, which the amendments defined in relevant part as "[a] material adverse

1

change in Employee's position causing it to be of materially less stature or responsibility without Employee's prior written consent."[1]  (Doc. # 33, Ex. 9, at 2; Ex. 10, at 2; Ex. 11, at 2.)

After the merger, the company's fortunes eventually deteriorated, prompting management changes and alterations in employee responsibilities.  Additionally, via letters dated December 1, 2003, TMNG notified Plaintiffs that "it came to our attention that the Amendment had no expiration date," which TMNG stated was contrary to its "normal practice."  (Doc. # 33, Ex. 14, 15, 16.)  TMNG therefore stated that it intended to terminate the amended employment agreements as of December 31, 2003 so that "[s]ubsequent to December 31 [Plaintiffs'] employment with TMNG will be at will for all purposes."  (Doc. # 33, Ex. 14, 15, 16.)

Plaintiffs resigned from employment prior to the December 31 effective date and sought severance benefits.  After TMNG declined to pay severance benefits, Plaintiffs filed a May 21, 2004 complaint in the Franklin County Common Pleas Court.  (Doc. # 1, Ex. A.)  The Complaint asserted five causes of action: breach of contract, promissory estoppel, *quantum meruit*, fraud, and violation of the Maryland Wage Payment and Collection Law for unpaid severance benefits.

---

[1] The amendments set forth three potentially relevant provisions that define a constructive termination as follows:

  i.   A material adverse change in Employee's position causing it to be of materially less stature or responsibility without Employee's prior written consent,
  ii.  A reduction, without Employee's prior written consent, in Employee's Monthly Base Salary, or
  iii. A relocation of Employee's principal place of employment by more than 50 miles without Employee's prior written consent.

(Doc. # 33, Ex. 9, at 2-3; Ex. 10, at 2-3; Ex. 11, at 2-3.)

On July 2, 2004, Defendants removed the action to this Court. (Doc. # 1.) Defendants then moved on July 27, 2004 to dismiss the Complaint for failure to state any claim upon which this Court can grant relief. (Doc. # 4.) In an March 9, 2005 Opinion and Order (Doc. # 20), the Court dismissed Plaintiffs' *quantum meruit* claim and the Maryland Wage Payment Act claim. Plaintiffs subsequently dismissed without prejudice their fraud claim (Docs. # 31, 32), so that only the claims for breach of contract and promissory estoppel remain. Defendants have now moved for summary judgment on these remaining two claims.

## II. Analysis

### A. Standard Involved

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must therefore grant a motion for summary judgment here if Plaintiff, the nonmoving party who has the burden of proof at trial, fails to make a showing sufficient to establish the existence of an element that is essential to his case. *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of Plaintiff, who must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52.)

### B. Discussion

#### 1. Breach of contract

Plaintiffs' breach of contract claims assert that Defendants breached the employment agreements as amended by failing to honor the severance pay provision discussed above. Defendants assert that they are entitled to summary judgment on Plaintiffs' claims for breach of contract because they had the right to terminate the agreements, so the terminations could not trigger the severance pay provisions so as to constitutes actionable breaches. They assert that the termination of the amendment provisions are not "material adverse change[s]" resulting in "materially less stature or responsibility" because the terminations did not reduce Plaintiffs' compensation and benefits.[2] Finally, Defendants also assert that Plaintiffs never experienced any

---

[2] Maryland law adheres to the principle that in addressing contract terms, a "court must accord the terms their ' customary, ordinary, and accepted meaning,' unless there is an indication that the parties intended to use the words in a technical sense." *Prince George's County v. Local Gov't Ins. Trust*, 388 Md. 162, 173, 879 A.2d 81, 88 (Md. 2005) (citations to quoted cases omitted). *See also Natl Union Fire Ins. Co. of Pittsburgh v. David A. Bramble, Inc.*, 388 Md. 195, 208, 879 A.2d 101, 109 (Md. 2005). This axiomatic principle of contract construction compels this Court to recognize that the amendments use the relevant terms and phrases within their ordinary and regular meaning, so that a substantive change in an employee's position–a change that is more than one of meager inconsequence to the employee's job and the benefits that position or job carries–that substantively diminishes that employee's corporate posture or powers/obligations can constitute constructive termination. Thus, while "material" does not mean "compensation" directly, a reduction in some areas of compensation can theoretically

pre-termination changes in their positions that constituted material devaluations of their stature or responsibilities.

In making these arguments, Defendants fail to distinguish between the right to do something and the effect of doing something. The parties agree that, pursuant to the contracts involved, Maryland law applies. Under the law of that state, "an employment contract of indefinite duration is considered employment 'at will' which, with few exceptions, may be terminated without cause by either party at any time." *Elliott v. Board of Trustees of Montgomery County Community College*, 104 Md. App. 93, 99, 655 A.2d 46, 49 ( Md. App. 1995) (citing *Page v. Carolina Coach Co.,* 667 F.2d 1156 (4th Cir.1982); *Adler v. American Standard Corp.,* 291 Md. 31, 432 A.2d 464 (1981)). As the Court stated in its previous Opinion and Order, neither of the two recognized exceptions to this rule apply here. *See id*. at 99-100, 655 A.2d at 49 (explaining that rule does not apply when an employee is discharged for exercising constitutionally protected rights or when an employee handbook has become a unilateral contract). Further, the contracts involved here expressly provide that Plaintiffs were at-will employees. The Court therefore again concludes that Defendants were able to terminate

---

constitute a "material adverse change" in stature. *See* footnote 8, *infra*.
     Resort to applicable dictionary definitions supports the foregoing description of the amendment language. One common meaning of "material" is "being of real importance or great consequence." *Webster's Third New International Dictionary* 1392 (2002). "Adverse" in turn commonly means "acting against or in a contrary direction," "in opposition to one's interests," and "opposite in position." *Id*. at 31. The definition of "change" of course is "the action of making something different in form, quality, or state." *Id*. at 374. Additionally, "materially" means "to a significant extent or degree." *Id*. at 1392. "Less" means under various definitions "of a more limited number," "of humbler rank," and "of reduced size, extent, or degree." *Id*. at 1296. "Stature" means "quality or status gained by impressive growth, development, or achievement," with "status" meaning a "position or rank in relation to others (as in a social order, community, class, or profession)." *Id*. at 2230. Finally, "responsibility" means "something for which anyone is responsible or accountable." *Id*. at 1935.

the amended employment contract as of December 31, 2003 at any time.

But, as before, this does not invariably lead to a judgment in favor of Defendants. Defendants' arguments overlook the fact that the stature of an employee's position could objectively be viewed by a reasonable jury as enhanced or devalued by the benefits and protections that employee enjoys. Defendants arguably used the employment agreements to retain key individuals.[3] A reasonable mind could conclude that the sudden termination of an inducement to that agreement underscores that individual's status as a "key" employee. This could constitute a breach of the first amendment "constructive termination" provision while remaining well within Defendants' power to act–even if the act can incur liability.

There is substantial evidence in the record that, if accepted by a factfinder, could suggest that contractual breaches occurred based on conduct *prior to* the December 31, 2003 effective date of the amended agreement's termination, including the terminations themselves.[4] For

---

[3] Defendants assert that they offered the amendments in exchange for a non-competition agreement from Plaintiffs and not to induce Plaintiffs to remain with the company. (Doc. # 42, at 8 fn.11.) The amendments amended Plaintiffs' employment agreements, which contained restrictions. In their December 1, 2003 letters to Plaintiffs, Defendants described these agreements as offered "to key employees" and to "serve to anchor members of the incoming team who it is felt will play a key role in the integration of the two companies." (Doc. # 33, Ex. 14, 15, 16.) There is thus a shifting characterization of the purpose and effect of the amendments.

[4] Defendants attempt to distinguish the persuasive authority embodied in *Dabertin v. HCR Manor Care, Incorporated*, 373 F.3d 822 (7th Cir. 2004) and *Bowles v. Quantum Chemical Company*, 266 F.3d 622 (7th Cir. 2002), on the grounds that *Dabertin* featured a reduction in the *scope* of an employee's authority and Bowles addressed the effects of a *change in control*. Defendants assert that such focuses stand in stark contrast to the case *sub judice*, which is concerned in part with adverse changes to the *stature* or *responsibility* of an employee. The distinction in terminology is ultimately one without a substantive difference, because a reduction of scope or resulting diminution of status can serve to limit responsibilities adversely and/or diminish stature. Although the changes involved here may not mirror the dramatic job alterations involved in *Dabertin* or *Bowles*, they nonetheless could be regarded by reasonable

example, Plaintiff Harris asserts that he was replaced by Mark Geinosky. There is a factual dispute as to whom Geinosky replaced, however, as there is significant other evidence suggesting that Geinosky replaced former TMNG Technologies head Kenneth Neimo and not Harris (who in fact reported to Neimo). In any event, Harris' deposition testimony supports the conclusions that neither Plaintiff Schafer nor Plaintiff Zapior would continue to report to Harris in the restructured organization and that Harris had lost input into the direction of the company. (Harris Dep. at 86-88.)

Additionally, in regard to Harris, the evidence indicates that Geinosky either directed (or as Defendants characterize it, asked) Harris to focus on pre-sale engineering responsibilities. Defendants assert that Harris agreed to this change, which shifted his focus more fully on these pre-existing duties and away from delivery-phase responsibilities. Although Harris' overall job description would remain the same, the focus of that job changed at least partially. A reasonable juror could find that the altered emphasis in Harris' job was objectively a material change transforming his position to one of less stature or responsibility. Moreover, there is no evidence of Harris' prior written consent to the changes, which, if they were material, the amendment required in order to avoid a constructive termination.

---

minds as effectuating a similar adverse impact on Plaintiffs. Thus, the cited cases can inform the discussion, albeit to a measured degree.

Similarly, *Woodbury v. American Home Products Corporation*, 285 F. Supp. 2d 544, 549 (D.N.J. 2003), is of some limited value to the debate. Defendants are correct in describing that case as involving a reduction in benefits, but in then discarding the case as necessarily distinguishable, they neglect that a reduction in benefits could effectuate a reduction in stature. The greater stature an employee has–the more "key" he or she is to the employer–the more benefits he or she might hold. Thus, losing benefits could be regarded by a jury as losing stature, which the jury could conclude falls within the relatively broad ambit of the amendment language.

There is also evidence in the record that Geinosky asked Plaintiff Schafer to focus on pre-sale engineering activities as opposed to delivery activities. Although Schafer remained a systems engineer, a reasonable juror could find that the altered focus of his job objectively constituted a material change resulting in the position holding less stature or responsibility. There is also no evidence of Schafer's prior written consent to this change.

Finally, although Defendants claim that Plaintiff Zapior's "core responsibility" was his role as a hardware salesman (Doc. # 33, at 24), Defendants concede that Geinosky stripped Zapior of various administrative duties. Zapior testified at his deposition that the transformation was more pronounced, in that he lost entire business relationships and managerial responsibilities (such as creating a new division called TMNG.biz).[5] He further testified that he became a "saleperson only, not responsible for any managing [or] any vendor relationships," roles that he had filled previously. (Zapior Dep. at 12.) Similar to Harris and Schafer, a reasonable jury could conclude that these adjustments constituted enough of a change so as to be a material changes affecting Zapior's stature or responsibilities.[6] Also similarly, there is no prior written consent by Zapior in the record to these changes.

---

[5] Defendants argue that various changes drew Zapior away from duties that he assumed only after entering into the amendment. The focus must be on the stature and responsibilities he held at the time the contract was finalized. This is not to say that neither Zapior's stature nor his responsibilities could change; rather, they could not change in such a way as to be materially less.

[6] The Court notes that there is a dispute as to whether Zapior was offered and agreed to a new job title, Vice President of Sales, Eastern Region, prior to his resignation. If this title preceded his resignation–and if it carried a substantive boon–then it could inform the issue of whether he experienced a material decrease in stature or responsibility. But if the title was offered or revealed to him following his submitted resignation–or if the position was of less import despite the title than his prior title–then a contrary inference could arise.

Reasonable minds could conclude that these events materially altered Plaintiffs' positions–with changes in job duties in 2003 and beyond diminishing stature–without first obtaining the written consent requisite to avoid constructive terminations.  In each instance, there was a shift in duties related to Geinosky's plan to revitalize floundering business operations by shifting the TNG workforce to sales, with Hewlett-Packard assuming delivery responsibilities. Under the express terms of the amended agreement, such changes could constitute materially adverse changes in Plaintiffs' positions that caused them to be of materially less stature or responsibility, which pursuant to the then-in effect amended agreements would have triggered the severance pay provisions.[7]  Additionally, as the Court noted before, it is conceivable that the fact that Defendants sought to terminate the amended agreement and its severance benefit as of December 31, 2003 suggests the reasonable permissible inference that even Defendants believed that they had entered into an agreement with a severance pay provision that would survive and apply at least *until* December 31, 2003.

Defendants also argue that the fact that they asked Schafer and Zapior to take paid time off in 2003 instead of in 2004 cannot constitute constructive terminations.  First, they assert that Schafer and Zapior acquiesced to the requests.  Second, Defendants contend that both Schafer and Zapior admitted that the mere request to take time off alone did not constitute a constructive discharge.  Schafer and Zapior in turn characterize the purported request as an order to take forced vacation time over objection, when in the past they had followed the practice of "cashing

---

[7] Defendants characterize the changes as resulting from the natural ebb-and-flow of business.  Regardless of the necessity of or rationale behind the changes, the focus must be on the substantive effect of the changes.  The agreements/amendments targeted effectuated results and not the intentions behind the changes producing those results.

out" accumulated time.  (Schafer Dep. at 107; Zapior Dep. at 42-43, 66-67.)  Defendants are correct that this may not have triggered the amendments' second constructive termination provisions (targeting monthly base salary reductions), but a reasonable mind could find that it connoted a loss of stature so as to trigger the first constructive termination provision in each agreement.[8]  And there is no evidence of prior written consent to this change.

As Plaintiffs' memorandum in opposition suggests, Defendants' forfeiture or waiver argument is wanting if the company viewed the severance triggers as capable of later invocation. Plaintiffs assert that Schafer, for example, was apparently expressly permitted to invoke the constructive discharge provision following the completion of a project.[9]  (Schafer Dep. at 91092,

---

[8]  Defendants have argued that the focus in the second "trigger" on a reduction in monthly base salary preempts compensation-related changes from falling under the rubric of the first trigger, the "material adverse change" provision.  But the lesser cannot swallow the greater. A monthly base salary is but a subset of potential compensation, which would include the monthly base salary and all additional monies to be earned through, for example, bonuses or cash-outs.  Thus, the Court rejects the proposition that the second trigger is dispositive here. Otherwise, under Defendants' rationale, the third trigger (targeting circumstances related to the relocation of an employee's principal place of employment) would foreclose a constructive discharge where TMNG relocated an employee from the main office to an unlit outhouse forty miles away, because the specific carve-out in trigger three would be incorrectly regarded as swallowing the general scope of trigger one.  Certainly, however, such a relocation would almost invariably be objectively regarded as a material adverse change in stature.
    The Court therefore reads the latter two triggers as simply *specific* carve-outs that address *limited* aspects of areas that are in their broad conception otherwise covered by the broader first trigger.  This more reasonable interpretation does not negate the value of the latter two triggers as Defendants suggest.  Defendants could, for example, relocate an employee's principal place of employment by 49 miles without employee's prior written consent without running afoul of the third trigger, and if the relocation did not effectuate a material adverse change in stature or responsibility, the first trigger would also not apply.  The latter two triggers can thus be regarded as limiting the employee's ability to invoke a constructive termination in select instances as much as curtailing the employer's power to act liability-free under the amendments.

[9]  In their reply memorandum, Defendants assert that Zapior's waiting until the announced termination of the amendment benefits to evoke his prior job "refocusing" as the event constituting a constructive discharge signifies that "he did not believe the changes to be a

97-98.) Defendants dispute this contention, arguing that Plaintiffs have failed to produce evidence that the TMNG employee who made this communication to Schafer was in a position to speak for the company. In making this argument, however, Defendants themselves neglect to point to evidence that this individual was not in such a position. The dispute is one for the jury.

In light of the foregoing, there are numerous important factual disputes yet to be resolved.[10] There are also inferences that, necessarily construed in Plaintiffs' favor, would enable a reasonable jury to conclude that various position changes, including the announced termination of the severance benefit, constituted materially adverse changes in Plaintiffs' positions so as to equal constructive terminations. There is also some evidence that, if believed, could support the conclusion that Plaintiffs did not waive the right to later invoke a constructive termination provision based upon prior changes of even many months beforehand. Because these issues must remain for trial, the Court **DENIES** Defendants' motion on the breach of contract claims.

**2. Promissory estoppel**

Defendants also contend that they are entitled to summary judgment on Plaintiffs'

---

triggering event." (Doc. # 42, at 2 fn.1.) Defendants' focus on Zapior's purported subjective perception stands in stark contrast to their continual emphasis (repeated a mere three pages later in their brief) that an objective standard applies to whether a change constitutes a material adverse change. Additionally, to the extent it is relevant in this context, Zapior's veracity in this regard is a matter for the jury.

[10] Other factual disputes exist, but most of these disputes are not material to the issues at hand. Similarly, the Court recognizes that there are also notable discrepancies in how the parties have characterized the facts. Although the Court is concerned with many of the allegations in Defendants' reply memorandum that Plaintiffs have conveniently mischaracterized events through selective ambiguity, the Court finds both no sanctionable misconduct or material misrepresentations at this time.

promissory estoppel claims. In their memorandum in opposition, Plaintiffs respond to Defendants' motion by noting that Defendants have conceded the existence of a contract and that "[t]his case can, therefore, be tried to the jury on a single contract claim." In light of both parties' concessions and applicable Maryland law, the Court **GRANTS** Defendants' motion only in regard to the abandoned or moot promissory estoppel claims.

### III.  Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion for summary judgment. (Doc. # 33.) Plaintiffs' breach of contract claims remain set for trial.

**IT IS SO ORDERED.**

    /s/  Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE